# IN THE COURT OF APPEALS OF IOWA

No. 23-1859
Filed February 7, 2024

IN THE INTEREST OF C.H. and E.H.,
Minor Children,

M.H., Mother,
        Appellant.
_____

        Appeal from the Iowa District Court for Bremer County, Peter B. Newell, District Associate Judge.

        A mother appeals the termination of her parental rights.  **AFFIRMED.**

        Joseph G. Martin, Cedar Falls, for appellant mother.

        Brenna Bird, Attorney General, and Lisa Jeanes, Assistant Attorney General, for appellee State.

        Jamie Schroeder, Shell Rock, attorney and guardian ad litem for minor children.

        Considered by Bower, C.J., and Greer and Chicchelly, JJ.

**BOWER, Chief Judge.**

A mother appeals the termination of her parental rights to two children,[1] born in 2014 and 2022.[2]  She claims termination is not in the children's best interests, and she requests a deferral of permanency or establishment of a guardianship as an alternative to termination.  Upon our review, we affirm.

## I.    *Background Facts and Proceedings*

This family came to the attention of the department of health and human services (department) in January 2022, when E.H. was born testing positive for amphetamine and methamphetamine.  The mother also tested positive for methamphetamine.  While at the hospital, the mother and E.H. each "display[ed] signs of withdrawal," and the mother became threatening and displayed erratic behavior toward hospital staff.  Concerns were also raised about the mother's inability to "care for [her older child, C.H., who] has diabetic medical needs," "mental-health needs [of] the parents, and domestic violence between the parents."  The children were removed from the mother's custody, placed with a maternal aunt,[3] and adjudicated in need of assistance.

More than a year passed, and the mother did not progress beyond fully supervised visits or participate consistently in drug testing or substance-abuse treatment.  In July 2023, the State initiated termination-of-parental-rights proceedings.  The termination hearing took place in October 2023.  At the outset of the hearing, the juvenile court denied the mother's request for a continuance.

---

[1] The mother's parental rights to three older children were terminated in 2012.
[2] The father consented to the termination of his parental rights.
[3] Initially, the mother was also living with the maternal aunt.  The children were formally removed from the mother's custody in April 2022.

The mother then spoke out to the court and was reminded her behavior in the courtroom could result in her being found in contempt. The guardian ad litem and department recommended termination of the mother's parental rights.

The children had been out of the mother's custody for eighteen months. All the department's initial concerns remained. The mother had been offered "more than forty opportunities to [drug] test," of which she "appeared for testing a total of six times." Of those six tests, two were negative but "unobserved collection[s]"; one was negative but "invalid"; one was negative; and another she failed to produce a sample. The final test the mother attended, in June 2023, was positive for methamphetamine, and she refused further tests requested by the department. Regarding her housing, the mother testified she "jump[s] back and forth between [her] mom and [the father's]. And the concrete." She maintained, however, the children "are always safe with [her]" and she "would have a place for [the children] to live with [the maternal grandmother]." The mother agreed she acted "a little erratically" at times but claimed her behaviors were due to a "brain injury that she has suffered in the past"[4] and "also because [the department was] trying to take [her] kids away." She further stated "[s]ome of the times when [caseworkers] thought [she] was using [illegal substances], it was probably the stress or whatever." She maintained, "I think it's illegal that you guys took my kids."

---

[4] The caseworker testified the department "strongly encouraged [the mother] to participate in a neuropsychological evaluation," but "she would not partner with us with getting that completed. She refused to sign releases."

The court entered an order terminating the mother's parental rights pursuant to Iowa Code section 232.116(1)(f) (2023) as to C.H. and section 232.116(1)(h) as to E.H.  The mother appeals.

## II.    *Standard of Review*

We review termination-of-parental-rights proceedings de novo.  *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019).  Upon our review, our primary consideration is the best interests of the children, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the children's safety and need for a permanent home.  *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III.    *Analysis*

In our review, we use a three-step analysis: first, determine if a ground for termination exists under Iowa Code section 232.116 subsection (1); next, apply the best-interest framework from subsection (2); and last, consider if any exceptions from subsection (3) apply to preclude termination.  *See In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018).  Because the mother does not contest the existence of the grounds for termination, we need not discuss this step.  *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

### A.    *Best Interests*

When determining best interests, we give primary weight to "the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]."  Iowa Code § 232.116(2).  Here, these factors all weigh in favor of termination.

In addition to the significant concerns originally prompting intervention in this case, the mother has a "lengthy histor[y] of issues related to child and family safety," which resulted in the termination of her parental rights to three older children. The mother points out she participated in visits consistently and "provided appropriate care for the children," but she acknowledges she "remained inconsistent [in] participation in other services." The caseworker testified the mother followed through on recommendations for substance-abuse treatment "to a degree, for a period of time," but she was eventually "[d]ischarged for failure to attend." The caseworker reported "[i]t's been several months" since the mother engaged in treatment. In addition, the mother agreed domestic violence continued to be an unaddressed issue, but stated the father is "all I know . . . . We've been together for 16 years"; "I've always hoped that we could be a family." On this issue, the caseworker opined:

> [I]t's important for the kids to know exactly where they're going to live the rest of their lives. I think it's certainly important for them to work toward reunification if the parents can make that happen successfully, but children should not have to wait indefinitely for their parents to become safe caregivers.
> . . . .
> There really is no evidence [the parents] have done much to alleviate the safety concerns that got us involved in the first place. Even up to a recent conversation I had with [the mother], she indicated that she didn't think it was important to talk about the domestic violence that's happened between herself and [the father]. So there's really no acceptance of accountability for what made the children unsafe to begin with.

In assessing the best interests of these children, we must look at their long-range as well as immediate interests. *See In re K.F.*, 437 N.W.2d 559, 560 (Iowa 1989). "This requires considering what the future holds for the child[ren] if returned to the parents." *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). While the mother

expressed passion in having her children returned to her custody, she has failed to follow through with the case plan, continues to struggle with her addiction, and does not have a stable home for the children. The children have bonded with their aunt and are well-integrated in her home. Termination is in the children's best interests.

### B. Additional Time

The juvenile court denied the mother's request to defer permanency to allow her additional time to work toward reunification. The mother renews her request on appeal. To grant an extension of time for reunification, the court must "enumerate the specific factors, conditions, or expected behavioral changes" providing a basis to determine the children will be able to return to the parent at the end of an additional six months. Iowa Code § 232.104(2)(b).

The caseworker was faced with this exact question at the termination hearing, to which she opined an additional period of services being offered to the mother would not correct the circumstances and allow for reunification. Indeed, the mother's own testimony belies such a conclusion. For example, the mother stated, "I was the one that requested inpatient treatment or something," and "[t]he only reason why I requested it was because you guys took my kids and I wanted them to come back—them with me." Similarly, the substance-abuse counselor reported that during the mother's evaluation, the mother told her to "just write whatever you need to write so I can go to in inpatient" and "refused to get honest . . . about her most recent use." During a meeting with the mother several weeks before the hearing, the caseworker noted "the court's expectations really have not changed," and the mother "shared that she is still not participating in substance-

abuse or mental-health treatment." Instead, the mother "continue[d] to fixate on her belief that the children should never have been removed from her care in the first place." On this record, the court had no basis on which to grant an extension.

*C.     Exceptions to Termination*

Once the State has proven grounds for termination, the burden shifts to the parent to prove a permissive exception under section 232.116(3). *See A.S.*, 906 N.W.2d at 475–76. The mother claims "the close bond between the mother and children" should preclude termination. *See* Iowa Code § 232.116(3)(c) (providing the court "need not terminate the relationship" if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship").

The caseworker observed the mother's visits with the children generally went well and there were no obvious safety concerns. However, she noted a recent visit when the mother "became agitated and hostile toward [her] in the presence of the children," as well as other visits during which "[t]here have been some instances where the [mother's] behavior would have been a little bit more erratic that would indicate that there was active use." The caseworker agreed the children shared a bond with the mother but testified the children were also bonded with their aunt and her boyfriend, who were willing to be a permanent placement for them. These factors weigh against finding the parent-child relationship precludes termination. *See In re J.S.*, No. 23-1396, 2023 WL 7391831, at *4 (Iowa Ct. App. Nov. 8, 2023). The mother has not established termination of her rights will be detrimental to the children.

*D.  Guardianship*

The mother also claims "a guardianship would be the most appropriate option for the children."  *See* Iowa Code § 232.117(5) (allowing the court, after a termination hearing, to not order termination of parental rights but instead enter an order in accordance with several sections, including section 232.104); *see also id.* § 232.104(2)(d)(2) (allowing the court to enter an order transferring guardianship and custody of the child to an adult relative).  To establish a guardianship in lieu of termination, the court must determine by clear and convincing evidence that "termination of the parent-child relationship would not be in the best interest of the child."  *Id.* § 232.104(4)(a).  However, "a guardianship is not a legally preferable alternative to termination."  *A.S.*, 906 N.W.2d at 477 (citation omitted).

On this issue, the guardian ad litem opined: "I do think a termination and adoption is the best permanency option for these children at this point in time, given how things have played out in these last two years of this case, and especially where we sit today in front of you and the evidence provided today."  Considering E.H.'s young age and the small percentage of her life spent with the mother, C.H.'s health needs, and concerns about "family drama" between the mother and the maternal aunt, we conclude a guardianship lacks the permanency these children need and deserve.

We affirm the termination of the mother's parental rights.

**AFFIRMED.**